UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. S2-4:19CR00211 RLW |
| TREMAYNE SILAS, | ) ) ) | |
| Defendant. | ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Tremayne Silas, represented by defense counsel Cirra Duffe, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count Three of the Second Superseding Indictment, the government agrees to move for the dismissal of Cause Number 4:20CR421 HEA at the time of sentencing. The United States further agrees that no further federal prosecution will be brought

1

in this District relative to the defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the indictment.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

### 3. ELEMENTS:

As to **Count Three**, the Defendant admits to knowingly violating Title 18, United States Code, Sections 2, 924(c) and 924(j), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

(1) The defendant, aided and abetted by others, knowingly possessed a firearm in furtherance of the drug trafficking crime as charged in Count One; and

(2) In the course thereof, with malice aforethought, unlawfully and willfully caused the death of A.N.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

2

## The Conspiracy

Beginning in 2016, Maurice Lee (hereafter "Lee") had primarily been distributing heroin in the St. Louis Metropolitan Area. The DEA and St. Louis County Police were actively investigating Lee and others relating to their drug distribution activities. After joining forces with Darryl Moore, (hereafter "Moore"), Lee began to distribute large quantities of fentanyl and "Ice" (crystal methamphetamine). Moore's source of supply was Juan Jose Gonzalez (hereafter "Gonzalez"), whom Moore met in Arizona. Moore's brother defendant Jermaine Weaver would assist Moore with transportation as he was an over-the-road truck driver. Defendant Weaver also financed the purchase of narcotics from Gonzalez.

Moore would in turn supply Lee with bulk quantities of fentanyl and Ice. Lee would then "whip up" or stretch the raw fentanyl with a cutting agent (mainly Dormin), and distribute the capsules. The Ice was sold in bulk quantities, primarily to one customer, who in turn would redistribute the Ice. At the height of the conspiracy, Lee utilized a minimum of nine co-conspirators to distribute the fentanyl to customers. On average, the conspiracy would distribute over 20,000 doses of fentanyl per week. Distribution occurred through the use of "runners" – Christopher Warlick (hereafter "Warlick"), Norris Douglas, Jr. (hereafter "Douglas"), Mikell Rayford (hereafter "Rayford"), Sherod Tucker (hereafter "Tucker"), Jerry Streeter, Jr. (hereafter "Streeter"), Jerome Fisher (hereafter "Fisher"), Charles Guice (hereafter "Guice"), Maricus Futrell (hereafter "Futrell") and Delvin Bost (hereafter "Bost"). The runners would get a supply of fentanyl capsules from either Lee, Ramico Adams (hereafter "Adams") or Jalisa Johnson (hereafter "Johnson"). Adams assisted Lee in keeping track of the amount of capsules distributed and the amount of money due back to Lee. Johnson would supply or resupply runners with

3

fentanyl and collect money at the end of the day. Tucker and/or Warlick were skilled at stretching the fentanyl for the drug trafficking organization (DTO), in order to increase profit. Grinders and blender were used to mix the fentanyl and Dormin, which was then scraped into empty capsules sitting in a pill press or tray. Scales were used to weigh the drugs. The capsules would then be placed in plastic bags.

The runners worked in groups and typically worked out of one or two vehicles at a time. All of them were armed with semi-automatic weapons, both handguns and assault rifles. Some of the runners were also considered to be "muscle" for the DTO and were willing to use violence, in order to protect the drugs, money and themselves from would-be thieves and rival gang members. Rival gangs were referred to by Lee and members of his DTO as "Goofies" and Lee had a standing contract to kill any Goofies. Lee offered from $5,000 to $15,000 for the murder of any Goofies.

On May 8, 2017 Lee was contacted by one or more co-conspirators who were trying to confirm that a bounty was still being offered by Lee for the death of A.N. Lee considered A.N. a "Goofy" and had accused A.N. of stealing from him. After Lee confirmed that the bounty was still being offered, co-defendants Warlick, Fisher, Guice and Tremayne Silas (hereafter "Silas") armed themselves and actively sought out A.N., who was drag racing in the City of St. Louis. After locating A.N. and confirming the bounty, Warlick, Fisher, Guice and Silas drove in two vehicles to a location where A.N. was driving with a passenger. The co-defendants jumped out of their vehicles and opened fire on A.N.'s vehicle. More than 100 rounds of ammunition were fired, scattering shell casings over the street. A.N. was struck in the head with a bullet and collapsed. His passenger climbed over his body, returned fire and managed to escape. He drove

4

to a firehouse for assistance. A.N. was then transported to a hospital where he was pronounced dead due to a gunshot wound to his head. Lee paid the bounty for the murder of A.N.

Silas kept the automatic rifle he used in the shooting death of A.N. That rifle was eventually seized from Silas following a high speed chase when Silas was arrested by the St. Louis City Police on January 24, 2018. Ballistics confirmed that the weapon seized from Silas in January 2018 matched several shell casings found at the scene of A.N.'s murder. Silas later admitted his involvement in the shooting death of A.N.

Rayford was arrested in March, 2018. At the time of his arrest, Rayford was in possession of a semi-automatic handgun with an extended magazine, $1,600 in U.S. currency, an AK style pistol with a drum magazine, and manufacturing paraphernalia – coffee grinders with powdery residue, a pill press, plastic bags, empty pill capsules, digital scales, rubber gloves, surgical masks and hair nets. In April 2018, the DEA arrested Moore and he consented to a search of two of his residences and his vehicle. Agents seized over 3.5 pounds of Ice (almost 100% purity), over $7,000 in U.S. currency and eight firearms, including an assault rifle. Moore confirmed for agents in a post-arrest interview that his source of supply was Gonzalez and that he supplied Lee with bulk quantities of Ice and fentanyl.

In June 2018, Douglas and Warlick were arrested following a high-speed chase in which Lee jumped out of the vehicle and managed to escape. Police spotted Lee in the car, which was a stolen Dodge Charger. Based upon previous surveillance, police knew that Douglas and Warlick distributed fentanyl on behalf of Lee from the stolen Charger. In a post-arrest interview, Douglas admitted to selling fentanyl for Lee and his DTO. Douglas possessed both fentanyl capsules and

5

more than one firearm, which were recovered from the stolen vehicle he was riding in and from a satchel he was carrying when he was arrested.

Investigators have confirmed that Lee controlled the DTO, with Adams just beneath him. They further confirmed that Gonzalez was the source of supply for Moore, who in turn supplied Lee, with Rayford, Douglas, Futrell, Streeter, Fisher, Tucker, Warlick, Guice and Bost as runners or enforcers.

From January 2016 until the date of the indictment (March 2019) within the Eastern District of Missouri and elsewhere, Defendant Lee conspired with Gonzalez and others both named and unnamed in the indictment to distribute and possess with intent to distribute fentanyl and methamphetamine.

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty is:

**Count 3:** imprisonment of not more than life or the death penalty, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than 5 years.

### 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that he following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

6

### Count Three

**(1) Base Offense Level:** The parties agree that the base offense level is 43 as found in Section 2A1.1 and is the minimum term of imprisonment required by statute.

**(2) Specific Offense Characteristics:** None.

**(3) Chapter 3 and 4 Adjustments:** None, according to Section 2K2.4(b).

**b. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**c. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States

8

Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

### b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that

9

any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

10/31/2022
Date

PAUL J. D'AGROSA (#36966MO)
Assistant United States Attorney

10-27-22
Date

TREMAYNE SILAS
Defendant

10-27-22
Date

Attorney for Defendant

12